**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------x

RAYMOND LEWIS and
FREDERICK ORTIZ.,
*individually and on behalf of all*
*others similarly situated,*

Plaintiffs,

-against-

THE CITY OF NEW YORK;
THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION;
THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION
COMMISSIONER LOUIS A. MOLINA;
CORRECTION OFFICER
"JOHN" LIPENSKI;
CORRECTION OFFICER
"JOHN" SMITH; and
JOHN AND JANE DOE
CORRECTION
OFFICERS 1-25,

Defendants.

---------------------------------x

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiffs Raymond Lewis and Frederick Ortiz (collectively, "Plaintiffs"), and the putative class that they represent, by and through their undersigned counsel, German Rubenstein LLP, allege as follows upon information and belief as against Defendants the City of New York ("City"), the City of New York Department of Correction ("DOC") Commissioner Louis A. Molina, DOC Correction Officer ("CO") "John" Lipenski, CO "John" Smith, and John and Jane Doe Correction Officers 1-25 (collectively, "Defendants").

## INTRODUCTION

1. The City of New York, its Department of Correction, and its COs at the Manhattan Criminal Courthouse at 100 Centre Street are illegally strip searching and/or cavity searching pretrial detainees who have been transferred from jail to the Courthouse for their court dates, when there is no legitimate penological interest for such searches and no reasonable suspicion of the harboring of weapons or contraband.

2. These illegal strip searches and cavity searches are a standard policy, practice, and procedure of and by the Defendants, and Plaintiffs and the putative class members are the victims of this unconstitutional policy, practice, and procedure.

3. Courts have long recognized the indignities of strip searches and cavity searches and the Constitutional limits on such searches. As such, they require justification.

4. The lack of justification for these searches is clear: prior to being placed on a DOC transit bus to Manhattan Criminal Court for their court date, armed COs at New York City Jails, including Rikers Island, thoroughly search and secure each detainee by:

a. Pat frisking all detainees;
b. Searching detainees' clothing;
c. Making detainees go through metal detectors/body scanners;
d. Making detainees go through the Body Orifice Screening System ("BOSS") chair for cavity searches;
e. At the COs discretion, a strip/cavity search involving the pants down, squat, cough procedure.

5. After the above search is complete, the searched detainees are confined to a guarded holding pen (designated by borough) awaiting transit arrival, at which time they are again:

a. Pat frisked by transit COs;

b. Handcuffed to another detainee and/or leg cuffed/shackled

a. Transferred to a caged DOC bus;

b. Locked inside the caged DOC bus chaperoned by armed COs for transport to the Manhattan Criminal Courthouse, 100 Centre Street.

6. Upon arrival at 100 Centre Street, the DOC bus parks in a secured entryway for detainees where the detainees are placed in a holding cell, remain restrained and guarded, pass through metal detectors, and are transferred to a location where they are strip/cavity searched as a standard policy, practice, or procedure.

7. The United States Constitution requires that, to justify the strip/cavity search of a detainee, COs must demonstrate a legitimate penological interest for such searches. Here, there is no conceivable need to strip search detainees at the Manhattan Criminal Courthouse at 100 Centre Street, as each detainee has already been thoroughly searched prior to his transit from jail, including Rikers Island, to the Manhattan Criminal Courthouse and has remained guarded and isolated from the public the entire time.

8. Upon information and belief, on or about November 24, 2022, December 9, 2022, December 29, 2022, January 12, 2023, January 17, 2023, February 1, 2023, February 14, 2023, and March 7, 2023, Plaintiff Raymond Lewis was strip/cavity searched at the Manhattan Criminal Courthouse third floor, although there was no legitimate penological interest, no discernible relationship to security needs at the Manhattan Criminal Courthouse to do so, and no particularized reasonable suspicion and/or probable cause to do so.

9. On or about January 27, 2023, Plaintiff Frederick Ortiz was strip/cavity searched at the Manhattan Criminal Courthouse, third floor, although there was no legitimate penological interest, no discernible relationship to security needs at the Manhattan Criminal Courthouse to do so, and no particularized reasonable suspicion and/or probable cause to do so.

10. The City/DOC has long been on actual and/or constructive notice about the problem of illegal strip searches and cavity searches and the Court can take judicial notice of the various strip/cavity search cases setting forth the constitutional requirements for such searches.

11. Upon information and belief, the City/DOC is not conducting strip/cavity searches of detainees transported from jail to the Bronx, Brooklyn, Queens, and Staten Island courthouses, yet continues this illegal practice at the Manhattan Criminal Courthouse.

12. Plaintiffs bring this civil rights class action pursuant to the United States Constitution, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1983, 42 U.S.C. §1988, and the New York State Constitution.

13. Plaintiffs seek redress for Defendants' deprivation, under color of state law, of Plaintiffs' and the class's rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of New York.

14. Plaintiffs and the putative class seek (1) declaratory judgment that a strip/cavity search of pre-trial detainees at the Manhattan Criminal Courthouse absent a legitimate penological interest is unconstitutional; (2) an order enjoining Defendants from failing to adequately train, investigate, discipline, and/ or supervise subordinates, and/or enjoining Defendants from implementing or enforcing their policy, practice, procedure, and/or custom of conducting strip/cavity searches in the absence of a legitimate penological interest; (3) compensatory damages for the injuries caused by Defendants' unlawful conduct; and (4) punitive damages assessed to deter such intentional or reckless deviations from well-settled constitutional law.

## JURISDICTION and VENUE

15. This action arises under the Fourth, Eighth, and Fourteenth Amendments to the

United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. §1983, 42 U.S.C. §1988, and the New York State Constitution.

16. The jurisdiction of this Court is predicated upon 28 U.S.C. §§1331, 1343(4), 1367, and 2201.

17. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b). The events giving rise to this claim occurred in this judicial district.

## PARTIES

### Plaintiffs

18. Plaintiff Raymond Lewis is a New York resident. Raymond Lewis is a pretrial detainee currently detained at Rikers Island, a DOC facility. Plaintiff Raymond Lewis was, and remains, a victim of Defendants' unlawful conduct.

19. Plaintiff Frederick Ortiz is a New York resident. Frederick Ortiz was, but is no longer, detained at Rikers Island, a DOC facility. Plaintiff Frederick Ortiz was a victim of Defendants' unlawful conduct.

### Defendants

20. Defendant City of New York ("City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through its DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all correctional matters and for the appointment, training, supervision, and conduct of all DOC personnel.

21. At all times material herein, Defendant City was responsible for ensuring that its personnel obeyed the Constitution and laws of the United States and the State of New York.

22. Defendant Louis A. Molina is DOC Commissioner. As DOC Commissioner, he is responsible for the development, implementation, and enforcement of all DOC policies,

practices, policies, and procedures. He is likewise responsible for the training and supervision of DOC personnel, and the overall administration of DOC facilities and actions. Defendant Molina is sued individually and in his official capacity.

23. Correction Officer "John"[1] Lipenski is and/or was at all relevant times an employee of the City of New York Department of Correction, working at the Manhattan Criminal Courthouse. Defendant Lipenski is sued individually and in his official capacity.

24. Correction Officer "John"[2] Smith is and/or was at all relevant times an employee of the City of New York Department of Correction, working at the Manhattan Criminal Courthouse. Defendant Smith is sued individually and in his official capacity.

25. Defendants "JOHN and JANE DOE CORRECTION OFFICERS 1-25" were at all times material herein Correction Officers working at the Manhattan Criminal Courthouse, who implemented, enforced, and effectuated the strip/cavity search policies, practices, and/or procedures that are the subject of this action, acting in the capacity of agents, servants and employees of Defendants City, DOC, and Molina and within the scope of their employment as such. Plaintiffs are unable to determine the names of these Defendants at this time, so they are sued under a fictitious designation. JOHN and JANE DOE CORRECTION OFFICERS Nos. 1-25 are sued in their individual and official capacities.

## CLASS ALLEGATIONS

26. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following class:

> *All individuals who, since March 28, 2020 are/were detained in a New York City Department of Corrections jail facility who are/were subjected to Defendants' policy, practice, procedure, and/or custom of being strip searched and/or cavity searched in the Manhattan Criminal Courthouse in the absence of any legitimate penological interest for such search.*

[1] First name and shield unknown.
[2] First name and shield unknown.

27. The members of the class are so numerous as to render joinder impracticable.

28. Upon information and belief, there were, are, and continue to be hundreds (or more) of pre-trial detainees being routinely strip searched and/or cavity searched at the Manhattan Criminal Courthouse in the absence of a legitimate penological interest, all of whom are members of the putative class, and all of whose federal and state constitutional rights have been or will be violated by Defendants' failure to adequately train, investigate, and/or supervise subordinates, and/or Defendants' policy, practice, procedure, and/or custom of routinely strip and/or cavity searching such detainees irrespective of whether a legitimate penological interest exists.

29. The questions of law and fact common to the class include whether a) the class members have common rights under the United States Constitution and New York State Constitution to be free from routine strip and/or cavity searches absent a legitimate penological interest or a particularized reasonable suspicion and/or probable cause for such searches, and b) Defendants' conduct in routinely strip and/or cavity searching class members without a legitimate penological interest or a particularized reasonable suspicion and/or probable cause violated those rights.

30. The named Plaintiffs are adequate representatives of the class. The violations of law alleged by the named Plaintiffs stem from the same course of conduct by Defendants that violated and continue to violate the rights of members of the putative class. Moreover, the legal theory under which the named Plaintiffs seek relief is the same or similar to that on which the putative class members will rely. Moreover, the harm suffered by the named Plaintiffs is typical of the harm suffered by the absent putative class members. The named Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the putative class members.

31. The named Plaintiffs are represented by German Rubenstein LLP who have extensive class action experience, as well as experience in civil rights litigation. German Rubenstein has litigated a variety of actions against governmental entities and their employees, including cases alleging police misconduct and sexual force. German Rubenstein LLP has the resources, expertise, and experience to prosecute this action. Counsel for Plaintiffs know of no conflicts among members of the putative class or between the firms and members of the putative class.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because (a) the prosecution of hundreds of separate actions would be inefficient and wasteful of legal resources; (b) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (c) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (d) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against Defendants, which would establish incompatible standards of conduct for Defendants; (e) Defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (f) questions of law and/or fact common to members of the class predominate over any questions that affect individual members.

## **FACTS**

33. The United States Constitution and the New York State Constitution prohibit state officials from performing strip/cavity searches on detainees absent a legitimate penological interest for such searches or a particularized reasonable suspicion or probable cause to believe the detainee is harboring weapons or contraband.

34. Defendants know, and at all times material herein have known, that they may not

institute, enforce, or permit enforcement of a policy or practice of conducting strip/cavity searches on detainees absent a legitimate penological interest for such searches or a particularized reasonable suspicion or probable cause to believe the detainee is harboring weapons or contraband.

35. In clear defiance of constitutional requirements, Defendants have promulgated, implemented, enforced, and/or failed to rectify a policy, practice, procedure, and/or custom of routinely and blanketly strip searching and/or cavity searching detainees at the Manhattan Criminal Court awaiting their court hearing for no legitimate penological interest and without any reasonable suspicion and/or probable cause, or indeed any suspicion of any sort.

36. Hundreds or more pre-trial detainees were, have been, or will be unconstitutionally strip and/or cavity searched with no legitimate penological interest pursuant to Defendants' policy, practice, procedure, and/or custom, and/or Defendants' failure to adequately train, investigate, discipline, and/or supervise, as described herein.

37. As a direct and proximate result of the unlawful strip/cavity searches conducted pursuant to Defendants' policy, practice, procedure, and/or custom, and/or Defendants' failure to adequately train, investigate, discipline, and/or supervise, as described herein, each victim of these unlawful searches—each member of the putative class, including the named Plaintiffs—have suffered or will suffer physical pain and/or discomfort, psychological pain and mental anguish.

*Plaintiff Raymond Lewis' Experience*

38. Plaintiff Lewis' experience is representative of the experience of the putative class members.

39. Plaintiff Lewis is 67 years old.

40. Plaintiff Lewis is detained at the Vernon C. Bain Center on Rikers Island awaiting

trial on burglary and larceny charges.

41. Upon information and belief, on or about November 24, 2022, December 9, 2022, December 29, 2022, January 12, 2023, January 17, 2023, February 1, 2023, February 14, 2023, and March 7, 2023, Plaintiff Lewis was illegally strip and/or cavity[3] searched at the Manhattan Criminal Courthouse, third floor.

42. Mr. Lewis underwent a thorough search for contraband while at Rikers Island including:

a. Pat frisk;

b. Clothing search;

c. Passing through metal detectors/body scanner;

d. Tongue to cheek search;

e. BOSS chair cavity search; and

f. a strip/cavity search involving the pants down, squat, cough procedure.

43. Plaintiff Lewis complied with all searches without incident. No contraband was detected on Lewis.

44. After the above search was complete, Lewis was confined to the Manhattan transport pen with other searched and secured Manhattan Criminal Court-bound detainees.

45. Mr. Lewis was next:

a. Pat frisked by transit COs;

b. Handcuffed to another detainee;

c. Transferred to a caged DOC bus;

d. Locked inside the caged DOC bus chaperoned by armed COs for transport

[3] The pants down, squat, and cough procedure which involves a visual inspection of the genitals and anus is considered a cavity search, which is considered a greater intrusion than a strip search.

to the Manhattan Criminal Courthouse, 100 Centre Street.

46. Plaintiff Lewis complied with all searches without incident. No contraband was detected on Lewis.

47. Upon arrival at 100 Centre Street, the DOC bus parked in a secured entryway (Baxter Street entrance) where Lewis was placed in a holding cell, remained restrained and guarded, passed through a metal detector, and was transferred to the third floor.

48. On the third floor, the CO on duty ordered that Plaintiff Lewis pull his pants down to his ankles, squat, and cough.

49. Mr. Lewis was advised by the CO that the strip search was "procedure."

50. Plaintiff Lewis complied without incident. No contraband was detected on Mr. Lewis.

51. Mr. Lewis was then handcuffed again, passed through a metal detector again, and escorted to his court hearing floor without incident.

52. Pursuant to Defendants' policy, practice, procedure, and/or custom, and/or failure to adequately train, investigate, and/or supervise, Plaintiff Lewis was illegally and unnecessarily strip searched on the third floor of the Manhattan Criminal Courthouse.

53. There was no reasonable suspicion and/or probable cause to believe that Plaintiff Lewis was concealing a weapon or other contraband.

54. There was no legitimate penological interest for the courthouse strip search.

55. As a direct and proximate result of the unlawful strip/cavity search conducted pursuant to Defendants' policy, practice, procedure, and/or custom, and/or failure to adequately train and/or supervise, Plaintiff Lewis has suffered physical pain and/or discomfort and has suffered and continues to suffer psychological pain and mental anguish.

56. Plaintiff Lewis has exhausted his administrative remedies. On or about March 15, 2023, Plaintiff Lewis filed a written grievance with the Department of Corrections. More

than seven business days have passed, and no proposed resolution has been presented to Plaintiff Lewis.

*Plaintiff Frederick Ortiz's Experience*

57. Plaintiff Ortiz's experience is representative of the experience of the putative class members.

58. Plaintiff Ortiz is 42 years old.

59. Plaintiff Ortiz was detained at the Vernon C. Bain Center on Rikers Island awaiting trial on an assault charge.

60. On or about January 27, 2023, Plaintiff Ortiz was illegally strip and/or cavity searched at the Manhattan Criminal Courthouse, third floor.

61. Mr. Ortiz underwent a thorough search for contraband while at Rikers Island EMTC including:

a. Pat frisk;

b. Clothing search;

c. Passing through metal detectors/body scanner;

d. BOSS chair cavity search;

e. Tongue to cheek search; and

f. a strip/cavity search involving the pants down, squat, cough procedure.

62. Plaintiff Ortiz complied with all searches without incident. No contraband was detected on Lewis.

63. After the above search was complete, Ortiz was confined to the Manhattan transport pen with other searched and secured Manhattan Criminal Court-bound detainees.

64. Mr. Ortiz was next:

a. Pat frisked by transit COs;

b. Handcuffed to another detainee;

e. Transferred to a caged DOC bus;

f. Locked inside the caged DOC bus chaperoned by armed COs for transport to the Manhattan Criminal Courthouse, 100 Centre Street.

65. Plaintiff Ortiz complied with all searches without incident. No contraband was detected on Ortiz.

66. Upon arrival at 100 Centre Street, the DOC bus parked in a secured entryway (Baxter Street entrance) where Ortiz was placed in a holding cell, remained restrained and guarded, passed through a metal detector, and was transferred to the third floor.

67. On the third floor, the CO on duty ordered that Plaintiff Ortiz pull his pants down to his ankles, squat, and cough.

68. Mr. Ortiz was advised by the CO that he was "following a formal procedure."

69. Plaintiff Ortiz complied with without incident. No contraband was detected on Mr. Ortiz.

70. Mr. Ortiz was then handcuffed again, passed through a metal detector again, and escorted to his court hearing floor without incident.

71. Pursuant to Defendants' policy, practice, procedure, and/or custom, and/or failure to adequately train, investigate, and/or supervise, Plaintiff Ortiz was illegally and unnecessarily strip searched on the third floor of the Manhattan Criminal Courthouse.

72. There was no reasonable suspicion and/or probable cause to believe that Plaintiff Ortiz was concealing a weapon or other contraband.

73. There was no legitimate penological interest for the courthouse strip/cavity search.

74. As a direct and proximate result of the unlawful strip/cavity search conducted pursuant to Defendants' policy, practice, procedure, and/or custom, and/or failure to adequately train and/or supervise, Plaintiff Ortiz has suffered physical pain and/or discomfort

and has suffered and continues to suffer psychological pain and mental anguish.[4]

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Claims Pursuant to 42 U.S.C. § 1983 for Violation of the Fourth and Fourteenth Amendment to the United States Constitution)**

75. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

76. The violations of Plaintiffs' and the respective class members' constitutional rights, Plaintiffs' and the class members' damages, and the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of Defendant City, which has encouraged, tolerated, ratified, and/or has been deliberately indifferent to the above mentioned patterns, practices, policies, and procedures and/or has been deliberately indifferent to the need for more or different training, supervision, investigation, and/or discipline in the area of searching pre-trial detainees at the Manhattan Criminal Courthouse and insuring that such detainees are searched within the law.

77. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice, and/or custom pursuant to which Plaintiffs and the putative class members were or will be strip searched and/or cavity searched without the requisite legitimate penological interest or particularized reasonable suspicion and/or probable cause, and/or by failing to adequately train, investigate, discipline, and/or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with their employees because the need to act is so obvious and the inadequacy of current practices is so likely to result in a deprivation of federal rights, Defendants have deprived and will continue to deprive each and every Plaintiff and member of the respective classes of

[4] Plaintiff Ortiz is no longer being held at a DOC facility, so he is not required to file a written grievance with the Department of Corrections.

rights, remedies, privileges, and immunities guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution—including the right to bodily integrity and the right against unreasonable searches—conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

78. Defendants acted under pretense and color of state law in their individual and official capacities and within the scope of their employment. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs and the class of their rights secured by the Fourth and Fourteenth Amendment to the United States Constitution.

79. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every Plaintiff and putative class member has suffered and continues to suffer physical pain and/or discomfort and has suffered and continues to suffer psychological pain and mental anguish.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Claims Pursuant to the New York State Constitution, Article 1, § 12)**

80. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

81. By implementing, promulgating, and continuing to enforce and effectuate a policy, practice, procedure, and/or custom pursuant to which the named Plaintiffs and the putative class members were or will be strip searched and/or cavity searched without the requisite legitimate penological interest or particularized reasonable suspicion and/or probable cause, and/or by failing to adequately train, investigate, discipline, and/or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with their employees because the need to act is so obvious and the inadequacy of current practices is so likely to result in a deprivation of rights, Defendants have deprived and will continue to deprive each and every Plaintiff and putative class member of rights,

remedies, privileges, and immunities guaranteed by the New York State Constitution, Article 1, § 12.

82. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every Plaintiff and putative class member has suffered and continues to suffer psychological pain and mental anguish.

## IRREPARABLE HARM

83. If Defendants' policy, practice, and/or custom of conducting strip searches without a legitimate penological interest or particularized reasonable suspicion and/or probable cause is not enjoined, and/or if Defendants' failure to provide adequate training and/or supervision to subordinates is not enjoined, Plaintiffs and class members may be subject to immediate and irreparable injury for which no adequate remedy at law exists because they are likely to suffer continued violations of their rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

## PRAYER FOR RELIEF

84. WHEREFORE, Plaintiffs ask this Court:

a. To enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and b(2) and b(3) for the class as described herein and naming Plaintiffs herein as the class representatives as counsel as class counsel.

b. To enter a judgment declaring unconstitutional Defendants' policy, practice, and/or custom of strip searching and or cavity searching previously searched and secured pre-trial jailhouse detainees after transport directly from the jail facility to the Manhattan Criminal Courthouse.

c. To enter a judgment declaring unconstitutional Defendants' failure to provide adequate training and/or supervision to subordinates.

d. To issue an order enjoining Defendants from implementing or enforcing the aforesaid

unconstitutional policy, practice, and/or custom, and/or enjoining Defendants to provide adequate training and/or supervision to subordinates.

e. To award Plaintiffs and members of the class compensatory damages in an amount to be determined at trial, plus prejudgment interest.

f. To award Plaintiffs and members of the class punitive damages against all Defendants in their individual capacities except for the City of New York, in an amount to be determined at trial, plus prejudgment interest.

g. To award Plaintiffs and members of the class reasonable attorneys' fees and costs under 42 U.S.C. §§ 1988 and 1920.

h. To grant such other and further relief to Plaintiffs and members of the class as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
March 28, 2023

**GERMAN RUBENSTEIN LLP**

By: _/s/ Joel M. Rubenstein

Joel M. Rubenstein, Esq.
GERMAN RUBENSTEIN LLP
Attorneys for Plaintiffs and the Class
19 West 44th Street, Suite 1500
New York, New York 10036
(212) 704-2020