

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK , NEW YORK 10007

MICHAEL PESIN-VIROVETS
*Senior Counsel*
mpvirove@law.nyc.gov
Phone:  (212) 356-2617
Mobile:  (646) 596-0583

November 21, 2023

<u>**VIA ECF:**</u>
Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: <u>Lewis et al. v. the City of New York et al.</u>
     23-CV-02600 (CM)

Your Honor,

  I am a Senior Counsel in the Office of the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and the attorney representing defendants City of New York ("City") and City of New York Department of Correction ("DOC") Commissioner Louis A. Molina (collectively "defendants") in the above-referenced matter. For the reasons set forth below, defendants respectfully request that the documents previously produced as DEF 0001 – DEF 0014, which contains the relevant portions of the DOC directive implementing the current strip search policy at Manhattan Detention Center ("MDC"), be marked as confidential. Plaintiffs' counsel, Mr. Steven German, Esq., does not agree that this document is confidential because, from plaintiffs' perspective, DEF 0001 – DEF 0014 (the "Directive") "is not some type of tactical guide. To the contrary it is the type of policy document the public ought to be aware of."  As explained more fully herein and in the accompanying Declaration of Benjamin Lee, Esq., plaintiffs are wrong.

**Background and Procedural History**

  Plaintiffs Lewis and Ortiz bring this putative class action concerning search procedures at MDC alleging, *inter alia*, that on multiple occasions, between November 24, 2022 and March 7, 2023, DOC subjected them to strip and cavity searches in violation of their constitutional rights. *See generally* ECF No. 1.  At the November 2, 2023 Court conference, defendants were ordered to produce the DOC directive implementing the current strip search policy at MDC. On November 9, 2023, defendants produced to plaintiffs and the Court the relevant portions of same. In particular, defendants disclosed the following specific documents: "Classification # 4508R-E, Subject: Control of and Search for Contraband" directive ("Directive 4508R-E"): Table of Contents (DEF 0001 – DEF 0002); General Definitions (DEF 0003 – DEF 0008); and Strip

Search *Without* A Visual Body Cavity Search, Strip Search *With* A Visual Body Cavity Search, and the accompanying appendices (DEF 0009 – DEF 0014).[1]

## Legal Standard

In *Lugosch v. Pyramid Co.*, 435 F3d 110, 118-120 (2d Cir. 2006), the Second Circuit established a three-part framework for determining when a party may file a document under seal. First, the Court must determine whether the documents are indeed "judicial documents" to which the public has a presumptive right of access. *Lugosch*, 435 F.3d at 119; *Amodeo II*, 71 F.3d at 1047; *United States v. Amodeo*, 44 F.3d 141, 145-46 (2d Cir. 1995) ("*Amodeo I*"). Second, if the documents are judicial documents, the Court must then determine "the weight of the presumption," *Lugosch*, 435 F.3d at 119, meaning, whether the presumption is an "especially strong," or one that can be overcome only by "extraordinary circumstances"; whether the presumption is a "low," or one that "amounts to little more than a prediction of public access absent a countervailing reason"; or, whether the presumption falls in between. *Amodeo II,* 71 F.3d at 1048, 1050 (internal quotations and citations omitted). "Finally, after determining the weight of the presumption of access, the Court must balance competing considerations against it." *Lugosch*, 435 F3d 110 at 120. A Court will seal a record if doing so "is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* at 124. Competing considerations include, among others, the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure. *Lugosch*, 435 F.3d at 120; *Amodeo II*, 71 F.3d at 1050.

## The Directive is Confidential

Here, the Court should grant defendants' request to keep the Directive confidential because without the protection of confidentiality there is a strong concern that disclosing the contents of the Directive could jeopardize the safety and security of DOC facilities, staff members, persons in custody, and the public at large. *See* Declaration of Benjamin Lee ("Lee Decl.") annexed hereto as "Exhibit A" at ¶ 17. To that end, unlike other DOC Directives, Directive 4508R-E, is not publicly available on DOC's website.[2] *Id.* at ¶ 9. Indeed, one court in this District has held that large portions of the very same Directive at issue in this litigation to be confidential. *Bradshaw v. the City of New York, et al.*, No. 15-CV-7074 (ER) (HBP), ECF No. 77 (S.D.N.Y. Aug. 10, 2018), annexed hereto as "Exhibit B." Specifically in *Bradshaw*, the court upheld redactions made regarding, *inter alia*, security concerns. Specifically, the court upheld the following redactions: All body text on page 13 of the directive (or in the present case, DEF0009), body text under subsection "G" on page 14 (DEF0010), page 15 (DEF0011), page 16 (DEF0012), the bottom half of the redactions on page 17 (DEF0013), and page 18 (DEF0014).

---

[1] The remainder of the Directive does not address strip searches, which is the claim at issue in this case, and therefore, as noted in defendants' November 9, 2023 letter, defendants only produced the portions of the directive regarding strip searches.

[2] https://www.nyc.gov/site/doc/directives/directives.page

*See* Redacted Directive, annexed hereto as *"Exhibit C."* Exhibit B holds that all the redactions of Exhibit C were permitted except for the redactions on the top portion of page 17.[3]

Specifically, the Directive promulgates the manner and circumstances under which persons in custody are searched and outlines the procedures that DOC staff must follow in accordance with such searches. *Id*. at ¶ 5-6, 8. Disclosure of the Directive procedures could allow a person in custody, or his co-conspirators, to strategize on how to attempt to bypass security protocols and, in turn, facilitate the possession and exchange of contraband such as drugs, weapons, or other items that could endanger the health, welfare, and safety of DOC staff, persons in custody, and the public at large. *Id*. at ¶ 10-11. Indeed, in the past year, DOC has had at least six incidents of contraband being recovered from attempts to smuggle such items into MDC. *Id*. at ¶ 13 Most recently, on November 8, 2023, an attorney who was present at Queens Detention Complex for a client visit (the client was a person in custody) was observed to be in possession of two objects wrapped in black electrical tape, which were hidden in the heels of his shoes; when the electrical tape was removed, officers discovered a green leafy substance inside. *Id*. at ¶ 14. In September of 2023, a person in custody was searched at MDC intake and found to be in possession of a one-inch scalpel also wrapped in black electrical tape. *Id*. at ¶ 15. Moreover, within the past year at MDC, Narcan was administered by emergency medical services on three separate occasions in order to treat individuals in custody for drug use. *Id*. at ¶ 16.

Here, DOC has a countervailing interest that overcomes the presumption of access to the Directive because of the danger of impairing law enforcement efforts – *i.e.*, the need to ensure persons in custody cannot access contraband while in DOC custody. As the Court can gather from the Lee Decl., there is a strong interest to maintain the confidentiality of the Directive during the pendency of this litigation. This is especially true given that DOC continues to experience breaches in security protocols that result in the recovery of weapons and drugs from persons in custody. The proposed remedy – maintaining the Directive as confidential during the pendency of this litigation – is narrowly tailored to protect the safety and security of DOC staff, persons in custody, and the public at large.

Furthermore, under the proposed remedy, plaintiffs will suffer little or no prejudice if the Court were to mark the Directive as confidential. The Court has unfettered access to the documents and is able to consider them in deciding the instant case on its merits. Thus, the case can proceed without delay. The only difference to plaintiffs would be an inability to *immediately* share the documents with parties outside this litigation. Indeed, there is no prejudice whatsoever to keeping the Directive confidential for the purpose of this litigation.

---

[3] Please note that the documents attached as Exhibit C is a portion of a larger document submitted ex-parte to the court in *Bradshaw v. the City of New York*. Please further note that the bates numbers on Exhibit C corresponds to the bates numbering of the document in *Bradshaw v. the City of New York.*

**Conclusion**

For the reasons set forth herein, defendants respectfully request that the documents previously produced as DEF 001 – DEF 0014, which contains sensitive information pertaining to DOC's strip search policy, should be marked as confidential. Thank you for your consideration of this request.

Respectfully submitted,

Michael Pesin-Virovets
*Senior Counsel*
Special Federal Litigation Division

cc:    **VIA ECF**
       All counsel of record.